ORIGINAL

SEDGWICK, DETERT, MORAN & ARNOLD LLP
REBECCA A. HULL Bar No. 99802
rebecca.hull@sdma.com
ERIN A. CORNELL Bar No. 227135
erin.cornell@sdma.com
One Market Plaza
Steuart Tower, 8th Floor
San Francisco, California 94105
Telephone: (415) 781-7900
Facsimile: (415) 781-2635

Attorneys for Plaintiff
Metropolitan Life Insurance Company

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

BZ

| | |
|---|---|
| METROPOLITAN LIFE INSURANCE COMPANY,<br><br>Plaintiff,<br><br>v.<br><br>CYNTHIA ZUNIGA, M ZUNIGA III, A MINOR AND SUSAN SNYDER<br><br>Defendants. | CV CASE NO. 10 2309<br><br>**COMPLAINT IN INTERPLEADER** |

Comes now plaintiff Metropolitan Life Insurance Company ("MetLife") and alleges:

JURISDICTION (28 U.S.C. SECTION 1331, 29 U.S.C. SECTION 1132 (e) (1), Fed. R. Civ. P. 22)

1. This Court has original jurisdiction over this action pursuant to 29 U.S.C § 1132(e)(1) and 28 U.S.C. §1331, because the action arises under the Employee Retirement Income Security Act of 1974, as amended ("ERISA"), 29 U.S.C. §1001, et seq. Further, this is an interpleader action pursuant to Rule 22 of the Federal Rules of Civil Procedure. This court also has jurisdiction pursuant to 28 U.S.C. §1335 because two or more adverse claimants of diverse citizenship are claiming entitlement to life insurance benefit in MetLife's custody the value of which exceeds $500.

VENUE – 28 U.S.C. SECTION 1132; 28 U.S.C. SECTION 1391

2. Venue is proper pursuant to 29 U.S.C. §1132(e)(2), 28 U.S.C. §1397, and 28 U.S.C. §1391(b), because a defendant resides in this district and a substantial part of the events giving rise to this action occurred in this district.

PARTIES

3. Interpleader plaintiff MetLife is a corporation organized under the laws of the State of New York, with its principal place of business in New York, New York. It is duly licensed to do business in the State of California.

4. Upon information and belief, defendant Cynthia Zuniga is a surviving daughter of Glenn Wickstrom (the "Decedent"), and she resides in Palo Alto, California.

5. Upon information and belief, defendant M Zuniga III (a minor) is a surviving grandchild of the Decedent and he resides in Palo Alto California.

6. Upon information and belief, defendant Susan Snyder is a resident and a citizen of Oregon.

GENERAL FACTUAL ALLEGATIONS

7. At all relevant times, MetLife had in force a life insurance policy issued to Fleet National Bank, Trustee as policyholder, designated as group policy number 96461-G (the "Policy") The Policy funded benefits under the Group Universal Life Insurance Plan ("the Plan"), an employee welfare benefit plan, which at all relevant times afforded Plan Benefits to certain eligible employees of Beckham Coulter, Inc. (the "Employer"), including Glen Wickstrom ("the Decedent"). The Plan included both Basic Life Insurance Benefits and optional Life Plus Benefits (collectively the "Plan Benefits.) MetLife is the claims fiduciary with regard to the Plan, and receives and decides claims for benefits under the Plan. See Certificate of Specifications and applicable pages of the Beckman Coulter Employee Guidebook attached hereto as Exhibit A.

8. On or about December 14, 1998, the Decedent executed a "J&H/KVI" form Beneficiary Designation, a true and correct copy of which is attached hereto as Exhibit B. Pursuant to the terms of the 1998 Beneficiary Designation, defendant Cynthia Wickstrom

Zuniga, identified therein as the Cynthia Wickstrom, Decedent's daughter, was designated as a 50% beneficiary and defendant Susan Snyder, identified as the Decedent's "Friend" was designated as a 50% beneficiary. Pursuant to the December 1998 Beneficiary Designation, defendant Susan Snyder is the sole contingent beneficiary.

9. On October 25, 2005, Decedent executed a "Beckman Coulter" form beneficiary designation, a true and correct copy of which is attached as Exhibit C, which names Cynthia Wickstrom as a 100% beneficiary of Decedent's Basic Life Insurance Benefits. The 2005 beneficiary designation states that it does not apply to Life Plus benefits.

10. On information and belief, in approximately October 2008, Decedent was diagnosed with an inoperable brain tumor.

11. On or about November 3, 2008, Decedent executed a General Durable Power of Attorney ("POA"), a true and correct copy of which is attached hereto as Exhibit D. The POA identifies defendant Cynthia Wickstrom Zuniga as the Decedent's Attorney-in-Fact. The POA, which was signed in Oregon, provides authority for the Attorney-in-Fact to change a beneficiary form with respect to insurance, but it is silent as to whether the Attorney-in-Fact can designate herself as a beneficiary. Pursuant to the terms of the POA, all authority granted to the Attorney-in-Fact "shall be exercised only in a fiduciary capacity for" the benefit of the Principal, Glenn E. Wickstrom.

12. On or about January 15, 2009, the Circuit Court for the State of Oregon, Lane County, issued a "Limited Judgment Appointing Guardian and Conservator for an Adult for an Indefinite Period" (the "Judgment") naming defendant Cynthia Zuniga as Conservator for Decedent. The Judgment, a true and correct copy of which is attached hereto as Exhibit E, was signed on January 15, 2009 and does not grant authority to change any beneficiary designation;

13. The Judgment required the Conservator to post a $700,000 bond, and states that, after the time for objections has expired, "[t]he court [found] by clear and convincing evidence" that a guardian is necessary for the "continuing care and supervision of" the insured, that the insured "cannot effectively manage his own property without assistance due to impairments as set forth in the petition." The Judgment specifically prohibits transfer of any interest of "any real

property, motor vehicles or boat" of the insured "without further order of the court."

14. On or about March 5, 2009, the Decedent signed a "Marsh@Worksolutions" form Beneficiary Designation, a true and correct copy of which is attached hereto as Exhibit F. This document is signed by "Glenn Wickstrom." Pursuant to the terms of the March 5, Beneficiary Designation, defendant Cynthia Zuniga is the sole primary beneficiary and defendant M. Zuniga III (a minor) is the sole contingent beneficiary.

15. Approximately nine days later, on or about March 14, 2009, the defendant Cynthia Zuniga signed a "Marsh@Worksolutions" form Beneficiary Designation, a true and correct copy of which is attached hereto as Exhibit G. This document is signed by Cynthia Zuniga as "Conservator and POA for Glenn Wickstrom." Pursuant to the terms of the March 14, Beneficiary Designation, defendant Cynthia Zuniga is the sole primary beneficiary and defendant M Zuniga III is the sole contingent beneficiary.

16. On or about July 18, 2009, the Decedent died.

17. The Policy was in full force and effect at the date of the Decedent's death, and MetLife is informed and believes that on the date of his death Decedent was a participant in good standing in the Plan. As a consequence of Decedent's death, the sum of SIXTY-EIGHT THOUSAND ($68,000.00), plus any applicable interest, in Basic Life Insurance became payable and the sum of TWO HUNDRED NINETY THOUSAND DOLLARS ($290,000.00), plus any applicable interest, in Life Plus benefits became payable under the terms of the Plan.

18. In or about September 2009, defendant Cynthia Zuniga demanded payment of the full Plan Benefits. In or about October 2009, MetLife paid 100% of the Basic Plan Benefits in the amount of SIXTY-EIGHT THOUSAND TWO HUNDRED NINE DOLLARS ($68,209) and 50% of the Life Plus Benefits in the amount of ONE HUNDRED FORTY-FIVE THOUSAND AND NINE HUNDRED AND ELEVEN DOLLARS ($145,911) to defendant Cynthia Zuniga. Plan Benefits in the amount of ONE HUNDRED FORTY-FIVE THOUSAND AND NINE HUNDRED AND ELEVEN DOLLARS ($145,911) remain unpaid (the "Remaining Plan Benefits").

19. MetLife cannot determine the proper beneficiary or beneficiaries of the Plan

Benefits and Remaining Plan Benefits without risking exposure of itself, the Plan, and Beckman Coulter, Inc. to double liability.

20. If a Court were to determine that the Decedent was competent to sign the March 5, 2009 beneficiary designation, then defendant Cynthia Zuniga is entitled to 100% of the Plan Benefits.

21. If a Court were to determine that the Decedent did not have the capacity to sign the March 5, 2009 designation form, but did have the capacity to sign the POA, then there remains a question of whether a Court will determine that the Attorney-in-Fact had the authority to designate herself as beneficiary in the March 14, 2009 designation. If a Court were to find that she did, then defendant Cynthia Zuniga would receive 100% of the Plan Benefits pursuant to the March 14 beneficiary designation. If she did not, then, a court might find that, under the March 14, 2009 designation, the Plan Benefits are payable to minor M Zuniga III as contingent beneficiary.

22. If the Insured did not have the capacity to sign either the March 5, 2009 designation form or the POA (pursuant to which Attorney-in-Fact signed the March 14, 2009 beneficiary designation), a Court may find that the Basic Life Insurance was payable to defendant Cynthia Zuniga pursuant to the November 5, 2005 designation and the Life Plus benefits are payable to Cynthia Wickstrom Zuniga and Susan Snyder, 50% each, pursuant to the December 1998 beneficiary form. On information and belief, Ms. Snyder has not predeceased defendant Cynthia Wickstrom Zuniga.

23. Adverse and conflicting claims for payment of the Plan Benefits have been or may be presented to MetLife by each of the defendants herein. Defendant Cynthia Zuniga claims to be entitled to the full amount of the Plan Benefits by reason of her designation as beneficiary, as reflected in Exhibits F and G hereto. Defendant Marco Zuniga III may be entitled to the full amount of the Plan Benefits pursuant to the March 14, 2009 designation if the Decedent had the capacity to sign the POA, but defendant Cynthia Zuniga did not have authority to designate herself as a beneficiary. Defendant Susan Snyder may be entitled to the 50% of the Life Plus Plan Benefits pursuant to the 1998 beneficiary designation, Exhibit B hereto.

## FIRST CLAIM – INTERPLEADER

24. Plaintiff realleges and incorporates herein by reference, as though set forth in full, the allegations of paragraphs 1 through 23, inclusive, above.

25. MetLife claims no beneficial interest in the Plan Benefits, but is a mere stakeholder.

26. MetLife has been explicitly or implicitly threatened with litigation against it in the event it fails to pay out the full unpaid Plan Benefits to defendant Cynthia Zuniga.

27. MetLife remains unable to determine the validity of the conflicting and adverse claims of defendants for the Plan Benefits, and is unable to determine to whom the Plan Benefits under the Plan, or any remaining part thereof, should be paid. MetLife cannot pay any part of the Remaining Plan Benefits to either defendant, without danger of being compelled to pay said sum to the other defendant.

28. As a mere stakeholder, MetLife has no interest in the Plan Benefits (except to ensure that they are distributed in accordance with ERISA and the Plan). MetLife therefore respectfully requests that this Court determine to whom said Remaining Plan Benefits should be paid.

29. MetLife is ready, willing and able to pay the Remaining Plan Benefits, in accordance with the terms of the Plan, in such amounts and to whichever Defendant or Defendants the Court shall designate.

30. MetLife is willing to deposit into the Registry of the Court the Remaining Plan Benefits, plus any applicable interest due and owing under the terms of the Plan, for disbursement in accordance with the Judgment of this Court.

WHEREFORE, plaintiff MetLife demands judgment as follows:

(i) Restraining and enjoining the Defendants by Order and Injunction of this Court from instituting any action or proceeding in any state or United States court against MetLife, the [insert identity of employer] or the Plan for the recovery of Plan Benefits or Remaining Plan Benefits, plus any applicable interest by reason of the death of the Decedent;

(ii) Requiring that Defendants litigate or settle and agree between themselves their

claims for the Plan Benefits or Remaining Plan Benefits, or upon their failure to do so, that this Court settle and adjust their claims and determine to whom the Plan Benefits or Remaining Plan Benefits, plus any applicable interest, should be paid;

(iii) Permitting MetLife to pay into the Registry of the Court the Remaining Plan Benefits, plus any applicable interest;

(iv) Dismissing MetLife with prejudice from this action and discharging MetLife, , and the Plan from any further liability upon payment of the Plan Benefits or Remaining Plan Benefits, plus any applicable interest into the Registry of this Court, or as otherwise directed by this Court;

(v) Awarding MetLife its costs and attorney's fees; and

(vi) Awarding MetLife such other and further relief as this Court deems just equitable and proper.

DATED: May 26, 2010

SEDGWICK, DETERT, MORAN & ARNOLD LLP

By: ______________________
Rebecca A. Hull
Erin A. Cornell
Attorneys for Plaintiff
Metropolitan Life Insurance Company

## CERTIFICATE SPECIFICATIONS

Group Policyholder: FLEET NATIONAL BANK, TRUSTEE
MARSH USA INC.- MULTIPLE EMPLOYER-TRUST NO. 5

Owner: GLENN E WICKSTROM
548 488 UNIVERSITY AVE # 422
PALO ALTO CA 94301

Group Name: BECKMAN COULTER INC
Group Policy Number: 96461-G
Policy Anniversary Date: JANUARY 1

Certificate Number: 2673731

Original Effective Date of Certificate: 01/01/1999

Current Effective Date of Certificate: 01/01/2008

Covered Person: GLENN E WICKSTROM

Covered Person's Age: 65 *

Specified Amount: $290,000 **

Rating Class: Non-Smoker
Accelerated Benefit Option: Yes

Dependent Term Insurance Rider: Not Elected

Final Date of Certificate: The Policy Anniversary Date Following the Covered Person's 95th Birthday. The Certificate Will Terminate Prior to This Date if the Contributions Paid Are Not Sufficient to Continue This Certificate in Force to This Date.

Guaranteed Minimum Interest Rate: 3.000% ****
Current Monthly Administrative Expense: $1.00
Minimum Loan/Withdrawal Amount: $200 ****

COPY

Maximum Specified Amount: 1000000
Current Non-Medical Issue Amount: 300000

Insurer: BECKMAN COULTER INC

* As of most recent Policy Anniversary Date
** The death benefit would be less any accelerated benefit which has been made payable
**** If participating in the Cash Accumulation Option
This Certificate Specifications Page is to be Attached to your Certificate of Insurance and Replaces Previously Issued Certificate Specifications Pages, if Any.

G.9704 (ee) Print Date: 03/10/2009

JV1002

# BASIC LIFE INSURANCE PLAN

**Translation Assistance (Asistencia de Traducción)**

**If you do not read or understand English, please contact Employee Benefits and someone will explain the information in this section in Spanish. Telephone: (800) 772-8333.**

**Si usted no lee o comprende Inglés, por favor pongase en contacto con Employee Benefits y alguien le explicara la información en esta sección en español. Teléfono: (800) 772-8333.**

## INTRODUCTION

Beckman Coulter sponsors a Basic Life Insurance program for employees. This program provides your named beneficiary(ies) a degree of financial security in the case of your death while you are an employee.

## ELIGIBILITY

The plan is applicable to employees of Beckman Coulter, Inc., Coulter International Corporation, Beckman Coulter Puerto Rico Inc., Hybritech Incorporated, employees of other subsidiaries approved by the Company as eligible and others classified by the Company as inpatriates.

If you are an employee of any business group noted above, or an inpatriate, you are eligible and automatically covered on the first day you are actively at work.

Individuals who are not classified by the Company as employees under Section 3121(d) of the Internal Revenue Code of 1986, as amended (including, but not limited to, individuals classified by the Company as independent contractors and consultants), and individuals who are classified by the Company as employees of an entity other than the Company or a Company Affiliate, are not eligible to participate in the plan.

## COST

There is no cost to you for this coverage. Premiums are paid entirely by the Company.

## AMOUNT OF YOUR COVERAGE

The amount of your coverage, calculated at January 1st, is one times your total pay. For this purpose, your total pay is your annualized base pay as of the prior December 31st, plus any incentive compensation (Performance Sharing, management, sales and service) paid during the prior year. For newly hired or rehired employees, your initial coverage amount is one

times your annualized base pay as of your hire or rehire date. Calculated amounts are rounded up to the nearest $1,000, to a maximum coverage amount of $4,750,000.

Each January 1, your total pay is recalculated and your coverage amount may increase at that time. If the recalculation would result in a decrease in coverage, your coverage amount will not be decreased, but will remain the same.

If you are on a medical leave of absence on January 1st, for either a personal or work-related injury or illness, any coverage increase that otherwise would occur on January 1st will not go into effect until you return to work.

## TAXABLE INCOME ON CERTAIN COVERAGE AMOUNTS

Although the Company pays the actual cost for your coverage, the IRS requires that you include in your taxable income a "cost" for coverage amounts *greater than* $50,000. This cost is called "imputed income." Imputed income is not actual income, but is treated as such for federal and any state income tax purposes, as well as for FICA and Medicare taxes. Imputed income amounts are included and taxed on each paycheck during the year.

Imputed income amounts are determined from the following age-based rates issued by the IRS:

**TAXABLE INCOME AMOUNTS FOR COVERAGE GREATER THAN $50,000**

| Age* | Cost per $1,000/Month | Age* | Cost per $1,000/Month |
|---|---|---|---|
| Under 25 | $ .05 | 50 – 54 | $ .23 |
| 25 – 29 | .06 | 55 – 59 | .43 |
| 30 – 34 | .08 | 60 – 64 | .66 |
| 35 – 39 | .09 | 65 – 69 | 1.27 |
| 40 – 44 | .10 | 70 and above | 2.06 |
| 45 – 49 | .15 | | |

* For purposes of the above table, age is your attained age on the last day of the year in which the table applies.

### Example

An employee who has $75,000 of basic life insurance has $25,000 of coverage over $50,000. Using the table above, if the employee will be 45 years old as of the end of the year, the imputed income amount per month for the employee would be $.15 per thousand dollars of coverage over $50,000. The monthly imputed income amount then would be

$3.75 (25 x $.15). The imputed income amount for the year would be $45.00 ($3.75 x 12 months).

## REDUCED COVERAGE OPTION

If your calculated coverage amount would be greater than $50,000, you may elect to reduce (or cap) your coverage amount to $50,000 to avoid the imputed income described above. You may elect to cap your coverage:

- Within 31 days of your hire or rehire date, or
- During open enrollment to become effective the January 1st following the open enrollment period.

If you elect to cap your coverage, you may reverse this election during any future enrollment period. Your coverage beginning the January 1st following your reversal election would then be as described under "AMOUNT OF YOUR COVERAGE."

## ADDITIONAL COVERAGE

Additional employee-paid life insurance and accidental death and dismemberment (AD&D) coverage for yourself and your family is available through the optional Life Plus and Personal Accident Insurance plans, respectively. For information about the Life Plus program, refer to separate materials from the independent Life Plus administrator, Marsh @WorkSolutions. The materials are available from Human Resources. For information about accidental death and dismemberment coverage, refer to Section 3C of this guidebook, "PERSONAL ACCIDENT INSURANCE PLAN."

The Company also provides, at no cost to you, business travel accident insurance. For information about specific coverages and special services while traveling on Company business, refer to Section 3D of this guidebook, "BUSINESS TRAVEL ACCIDENT INSURANCE PLAN."

## BENEFICIARY

You may name any beneficiary you want. If you wish, you may name more than one beneficiary, and you may change your beneficiary at any time. Any change will take effect on the date you complete and sign a new beneficiary form. Beneficiary forms are available from Human Resources, and on *Odyssey*, Beckman Coulter's Intranet.

Regardless of any changes in your personal life, your basic life insurance benefit will be paid to the beneficiary(ies) you name. You should periodically review your beneficiary designation to be sure it is current and coordinates with any will or trust.

If there is no designated beneficiary, or no designated beneficiary living after your death, your basic life insurance will be paid to the first living person or group of persons in the following order:

- Your spouse
- Your children, in equal shares
- Your parents, in equal shares
- Your brothers and sisters, in equal shares
- Your estate

## PAYMENT OF BENEFITS

If you die while employed, your basic life insurance benefit will be paid to your beneficiary. Generally, an account is established in your beneficiary's name to provide the person time to best decide how to use the funds. When the account is established, your beneficiary will receive personalized checks that may be used to withdraw up to the entire amount of the account at any time. Your beneficiary also will be provided with other settlement options that may then be available.

Your beneficiary may assign up to the full amount of the basic life insurance payment to a mortuary (funeral home). Documentation for the assignment should indicate the amount of the benefit being assigned, and accompany the claim form. If the assignment request is received later than the claim form, the claim may be paid before the assignment can be processed.

Under certain circumstances, you may be eligible to request payment of a portion of your basic life insurance while still living. Called "accelerated benefits," such payments may be for up to 50% of your basic life insurance amount. Accelerated benefits generally may be requested if you are less than 63 years old, determined by your physician to be terminally ill with a life expectancy of six months or less, and have coverage of at least $20,000. Other requirements also may apply at the time you or your legal representative request an accelerated benefit payment.

For more information regarding the above, or other payment alternatives, contact MetLife (the insurance company for this plan) toll-free at (800) 638-6420.

## COVERAGE DURING LEAVE OF ABSENCE

Your basic life insurance is continued while you are on an approved leave of absence.

## WHEN COVERAGE ENDS

Your coverage will end:

- On the day your employment ends; *or*
- When the plan is terminated.

## EXTENDED COVERAGE

If you are totally disabled (as determined by MetLife) on the date your employment ends, have been disabled for nine months, and were disabled before you reached age 60, your basic life insurance coverage will be extended. The maximum extension period is one year, and is subject to your continuing to be disabled throughout this period. The amount of coverage during your extension period is the amount that was in effect when your disability first began.

Employee Benefits will send you information about how to file a claim approximately eight months after you become totally disabled. Your claim for extended group life insurance coverage must be filed with MetLife within 12 months of when your total disability began.

## CONVERSION COVERAGE

If your employment with Beckman Coulter ends, your basic life insurance protection continues for 31 days following your termination of employment. During this period, you may apply in writing to MetLife to convert your basic life insurance to an individual life insurance policy. For more detailed information about converting to an individual policy, contact MetLife toll-free at (877) 275-6387.

No medical examination is required for conversion coverage. The individual policy will become effective 31 days after your employment terminates, provided the premium is paid to MetLife no later than that date.

The amount you may convert may be equal to or less than the amount you were covered for under the group policy.

If you die within 31 days of when your employment ends, the amount of your basic life insurance will be paid to the beneficiary you named for your group coverage. However, if you had already submitted an application for conversion coverage, basic life insurance benefits will be paid to the beneficiary named in your conversion application.

## HOW TO APPLY FOR BENEFITS

Upon notification of an employee's death, Employee Benefits will assist the beneficiary in filing a claim. After the claim is completed, it will be forwarded to MetLife for processing. Only the designated beneficiary will be given any information relating to the payment.

The following information will be required to begin processing a claim and before any benefits are paid:

- Employee's name and Social Security number
- Certified copy of the death certificate
- Beneficiary's name, address, and Social Security number

## ADDITIONAL INFORMATION

If you have questions or need information about basic life insurance benefits, contact Employee Benefits, or MetLife toll-free at (800) 638-6420. If there are any differences between this summary and the contract with MetLife, the contract will govern.

## References

### Official Plan Name and Plan Identification Number

Life insurance benefits are provided under the Beckman Coulter, Inc. Welfare Benefits Plan—#591.

### Plan Administration

Life insurance benefits are administered by Metropolitan Life Insurance Company. Their address is MetLife, Utica Group Claims, P.O. Box 4016, Utica, New York 13504-3016.

Coverage under the Basic Life Insurance Plan is guaranteed for the period(s) in which the Company's contract with the provider remains in effect, so long as you meet the eligibility requirements under the plan.

### Plan Financing

The premiums for life insurance benefits are paid entirely by the Company. Employees are not charged for the coverage. Benefits are provided under the group insurance policy 96864-G issued to Beckman Coulter, Inc. by Metropolitan Life Insurance Company. The benefits are funded through the Beckman Coulter Welfare Benefits Plan Trust.

**Rights Under ERISA**

Infonnation about claims review procedures, governing plan documents and rights under ERISA is included in Section 7A of this guidebook.

# J&H/KVI BENEFICIARY DESIGNATION FORM

This form is to designate a beneficiary for life insurance coverage for you and your spouse. Remember: When designating the Primary Beneficiary, be sure that the total shares equal 100%. Your Contingent Beneficiary is the person who will receive the death benefit if your primary beneficiary is no longer living.

Owner Name GLENN E. WICKSTROM SSN: 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

Daytime Phone (541) 995-8043 Cert.: ______

Please check if new address — Address P.O. BOX 8483

City State Zip COBURG, OR. 97408

Owner's Employer (or company insurance obtained from): Beck

All previous beneficiary designations are hereby revoked and the following are designated as beneficiaries under this coverage.

**Primary Beneficiary for Employee Coverage**

| Name(s) | % Share | Relationship |
|---|---|---|
| CYNTHIA WICKSTROM | 50% | DAUGHTER |
| SUSAN SNYDER | 50% | FRIEND |
| | | |
| Total: | % (must equal 100%) | |

**Contingent Beneficiary (if Primary is not living)**

| Name(s) | % Share | Relationship |
|---|---|---|
| SUSAN SNYDER | 100% | FRIEND |
| | | |
| Total: | % (must equal 100%) | |

**Primary Beneficiary for Spouse Coverage**

| Name(s) | % Share | Relationship |
|---|---|---|
| | | |
| | | |
| Total: | % (must equal 100%) | |

**Contingent Beneficiary (if Primary is not living)**

| Name(s) | % Share | Relationship |
|---|---|---|
| | | |
| | | |
| Total: | % (must equal 100%) | |

(The beneficiary for dependent children's coverage is the employee unless otherwise designated.)

I represent the statements and answers given in this request form are true, complete, and correctly recorded to the best of my knowledge and belief. I understand the request for service will not become effective until received at Johnson & Higgins Kirke Van Orsdel, Inc. and approved in accordance with the terms of the coverage.

Owner's Signature Glenn Wickstrom Signed this 14 day of DECEMBER, 1998

(Designations are invalid unless signature and date are completed.)

Please send your signed change form to:

Johnson & Higgins Kirke Van Orsdel, Inc.
P.O. Box 9279
1776 West Lakes Parkway
West Des Moines, Iowa 50398

2090700889006

# Beneficiary Designation

BenefitConnections

GLENN WICKSTROM — Employee name (Please print)

HOURLY — Payroll type (hourly or salaried)

715638 — Employee number

**This designation applies only to Basic Life, Business Travel Accident Insurance, Personal Accident Insurance and the Employees' Stock Purchase Plan. For purposes of the Employees' Stock Purchase Plan, this designation applies only to any contributions deducted from paychecks that have not been used to purchase shares of stock as of your date of death, and not to any shares purchased prior to your date of death. You are the beneficiary for Personal Accident Insurance benefits paid upon the death of a covered family member. This designation does not apply to Life Plus, or any other Beckman Coulter benefit program.*

**Primary Beneficiary(ies)*:**

| Name | Social Security No. | Relationship | % of Benefit | Address |
|---|---|---|---|---|
| CYNTHIA WICKSTROM | | DAUGHTER | 100% | |
| | | | | |
| | | | | |
| | | | | |

**Secondary Beneficiary(ies)* to receive benefits if no primary beneficiary survives me:**

| Name | Social Security No. | Relationship | % of Benefit | Address |
|---|---|---|---|---|
| | | | | |
| | | | | |
| | | | | |
| | | | | |

**Even if there is a change in relationship (for example, divorce), the person you have named will remain a beneficiary unless you complete a new form.*

**Signature:** My signature below certifies that I wish to make the beneficiary designations shown above and that all information is correct and true.

Glenn Wickstrom
Signature

10/25/05
Date

10/99

**Return this form to Employee Benefits in Fullerton (M/S C-32-D).**

BECKMAN COULTER

# GENERAL DURABLE POWER OF ATTORNEY

I, **Glenn E. Wickstrom**, Principal, designate **Cynthia A. Wickstrom Zuniga** as my Attorney-in-Fact ("Agent").

1. POWERS. The powers of my Agent include but are not limited to the following powers, all of which shall be exercised only in a fiduciary capacity for my benefit:

1.1. PROPERTY. To act for me in any manner affecting my property as if I were personally present. This shall include any real or personal property, any tangible or intangible property, and any property I now own or later acquire.

1.2. INSTRUMENTS. To execute, deliver, and acknowledge any written instruments for me. This includes agreements, deeds, notes, and other evidences of indebtedness, mortgages, trust deeds, pledges, security agreements, releases, satisfactions, receipts, and assignments.

1.3. ACCOUNTS. To open, deposit into, withdraw from, and close any type of account at any bank or similar financial institution. My Agent may execute and deliver checks, drafts, and orders upon those accounts and endorse all such instruments payable to me. My Agent may receive either cash for the same or deposit the same in any account.

1.4. SAFE DEPOSIT BOX. To have access to any safe deposit box rented in my name, to open new safe deposit boxes, to remove any of the contents of any safe deposit box, to add to the contents of any safe deposit box, and to close out any safe deposit box.

1.5. INVESTMENTS. To invest and reinvest my property for me as my Agent deems appropriate. This includes investment in the stock of any corporation, bonds, notes, and other securities. My Agent may exercise all of the rights of ownership of those securities. This includes the rights to transfer or exchange those securities, to receive interest and dividends, to vote at any shareholder's meeting, to otherwise act as my proxy or representative in respect of any such security with full power to substitute one or more persons as my proxy or proxies, to exercise stock right privileges, and to open brokerage accounts (on cash or on margin).

1.6. SAVINGS BONDS AND TREASURIES. To cash, redeem, endorse, liquidate or convey any or all Savings Bonds, Treasury Securities and United States Savings Bonds, of whatever series and denominations, owned by me or registered in my sole name or jointly with others.

1.7. TRANSACTIONS. To acquire and transfer any property of mine, including my residence and the right to purchase, receive options to purchase, sell, grant options to sell, exchange, grant or receive mortgages, trust deeds, and other security interests, and to lease and sublease.

1.8. COLLECTIONS. To demand payment, compromise, take all lawful means to collect and recover, accept payment and grant discharges for all monies or other property belonging to me. This includes the right to file any claim and to file any legal or equitable proceeding to recover secured and unsecured notes, interest, dividends, government benefits, insurance proceeds, employee benefit plan proceeds, and bequests and inheritances. This shall include the power to receive, endorse, and collect the proceeds of any check payable to me and drawn upon the Treasury of the United States, the State of Oregon, or any other person.

1.9. TAXES. To represent me in all tax matters.

a. To prepare, sign, and file federal, state, or local income, gift, or other tax returns of all kinds, FICA returns, payroll tax returns, claims for refunds, requests for extensions of time, ruling requests, petitions to the Tax Court or other courts regarding tax matters, and any and all other tax-related documents, including but not limited to receipts, offers, waivers, consents (including but not limited to consents and agreements under Internal Revenue Code Section 2032A, or any successor section thereto), closing agreements, and any power of attorney form required by the Internal Revenue Service, the Oregon Department of Revenue, or other taxing authority with respect to any tax period;

b. To pay taxes due, collect refunds, post bonds, receive confidential information, and contest deficiencies determined by the Internal Revenue Service, the Oregon Department of Revenue, or other taxing authorities;

c. To exercise any elections I may have under federal, state, or local tax law; and

d. Generally to represent me in all tax matters and proceedings of all kinds and for all periods before all offices and officers of the Internal Revenue Service, the Oregon Department of Revenue, and any other taxing authority.

1.10. BUSINESS. To continue or participate in the continued operation of any business in which I have an interest including but not limited to any limited partnership, general partnership, limited liability partnership, limited liability company, private corporation, professional corporation, cooperative, or sole proprietorship. My Agent may pay salaries, enter into buy-sell or similar agreements, and discontinue, sell, or liquidate that business interest at any time and on such terms as my Agent deems advisable.

1.11. PROPERTY MANAGEMENT. To take all action necessary to manage any property interest of mine. This includes the powers to maintain, repair, improve, alter, lease, collect rentals, insure, and collect insurance proceeds. Further, my Agent may borrow money as my Agent deems advisable for the purpose of managing my property.

1.12. LEGAL PROCEEDINGS. To prosecute, defend, and settle any legal proceeding to which I am now or later become a party; employ and pay attorneys, investment counsel, accountants, and other persons as my Agent deems advisable; and pay any of my legally enforceable debts.

1.13. LIFE INSURANCE. To exercise all options, benefits, rights, privileges, and incidents of ownership, including the right to designate the beneficiaries, under any life insurance policy owned by me, other than a policy insuring the life of my Agent, even if subject to the Employee Retirement Income Security Act of 1974.

a. My Agent may take all actions that my Agent deems necessary or advisable regarding any life insurance policy owned by me, including but not limited to the following: (1) Borrowing cash values from any policy; (2) Borrowing funds, using any policy as collateral; (3) Exercising any renewal or conversion privilege granted in connection with any policy and exchange any policies for other policies; (4) Converting policies to paid-up policies; (5) Accepting the cash value of any policy upon the surrender of that policy; (6) Paying policy premiums; and (7) Paying loans against any policy.

b. Any receipt, release, or other instrument executed by my Agent in connection with any policy shall be binding and conclusive upon all persons.

1.14. RETIREMENT PLANS. To deal with any retirement plans of which I am now, or may become an owner or participant, including but not limited to, the power to establish, roll over, convert to another type, or terminate a retirement plan, to make investment decisions, to name, change and remove beneficiaries, to select or change payment or distribution options (including a direct transfer permitted under Internal Revenue Code ("IRC") § 402(c)(11)), to withdraw cash, and generally to take any other action with respect to any retirement plan which I can take. "Retirement plan" means a qualified retirement plan within the meaning of IRC § 4974, a Roth IRA within the meaning of IRC § 408A, an eligible deferred compensation plan within the meaning of IRC § 457(b), an ineligible deferred compensation plan described in IRC § 457(f), and a nonqualified deferred compensation plan subject to IRC § 404(a), (b), or (d).

2. INTERPRETATION AND APPLICATION.

2.1. THIRD PARTY RELIANCE. Any third party may rely upon the representations of my Agent as to all matters relating to any power granted hereby to my Agent. No person who acts in reliance upon the authority granted hereby to my Agent, or upon any representation as to the continued existence of that authority by my Agent, shall incur any liability to me or my heirs, successors, assigns, or personal representative as a result of permitting my Agent to exercise any power granted hereby.

2.2. BINDING EFFECT. Anything done by my Agent by virtue of this grant of power, and all the powers herein granted, shall bind me and my heirs, successors, assigns, and personal representative.

2.3. RATIFICATION OF MY AGENT'S ACTS. I hereby ratify every act of my Agent taken by virtue of this power of attorney.

2.4. DISABILITY. The authority and power granted hereby to my Agent shall not be affected by my later legal disability or incapacity. Further, the authority and power granted hereby to my Agent shall continue as long as my Agent acts in good faith without actual knowledge of my death, except that my Agent's power to name, change, or remove the beneficiaries of a retirement plan, and my Agent's power to do anything else that has the effect of

naming, changing, or removing the beneficiaries, terminates upon my death, whether or not my Agent has actual knowledge of my death.

2.5. INTERPRETATION. This instrument is to be construed and interpreted as a General and Durable Power of Attorney under the laws of the State of Oregon.

2.6. CAPTIONS. The captions are inserted only for convenience and have no substantive effect.

2.7. GENERALITY. The enumeration of specific powers granted to my Agent herein shall not limit the scope of the general and implied powers granted to my Agent herein.

2.8. PARTIAL INVALIDITY. If any provision of this instrument is invalid for any reason, such invalidity shall not affect any of the other provisions of this power and any invalid provision shall be wholly disregarded.

2.9. REVOCATION AND SUBSTITUTION. I reserve the right to revoke or amend this power of attorney and to substitute agents, but such revocation, amendment, or substitution may not be made by any Agent of mine.

2.10. OTHER POWERS OF ATTORNEY. This power of attorney shall not be construed as a limitation on any powers I have granted to my Agent under another power of attorney.

2.11. LIMITATION OF LIABILITY. My Agent shall not be liable to me or my heirs, successors, assigns, or personal representative for any action taken or not taken by my Agent in good faith in the absence of willful misconduct or gross negligence.

2.12. COMPENSATION. My Agent shall be entitled to reasonable compensation for services performed hereunder.

2.13. NOT A POWER OF APPOINTMENT. I intend by granting this power of attorney to give my Agent the broadest possible powers to represent my interests in all aspects of any transactions or dealings involving me or my property. However, I do not intend that the granting of any such power to my Agent cause the inclusion of any amount or property in the gross estate of my Agent for federal estate tax purposes or result in the inclusion of any amount or property in the taxable gifts of my Agent for federal gift tax purposes. Accordingly, my Agent shall not have any power to (a) use my assets to satisfy any legal obligation of my Agent or to support any person (other than me or any person that I am legally obligated to support), (b) exercise any incident of ownership or any other power over any life insurance policy insuring the life of my Agent, or (c) increase any amount payable upon or after my death to my Agent or my Agent's estate or to the creditors of my Agent or my Agent's estate.

[The rest of this page is intentionally left blank].

09288041260011

Signed in three counterpart originals, DATE.

Glenn E. Wickstrom

STATE OF OREGON )
) ss.
COUNTY OF Lane )

This instrument was acknowledged before me on November 3, 2008 by Glenn E. Wickstrom.

OFFICIAL SEAL
LISA M LONG
NOTARY PUBLIC - OREGON
COMMISSION NO. 389843
MY COMMISSION EXPIRES FEB. 22, 2009

Lisa M. Long
Notary Public for Oregon
My commission expires: Feb 22, 2009

RECEIVED JAN 15 2009 LANE CO. CIRCUIT

FILED
2009 JAN 15 PM 4:31
CIRCUIT COURT OF OREGON FOR LANE COUNTY
BY Jc

IN THE CIRCUIT COURT OF THE STATE OF OREGON FOR LANE COUNTY

| | |
|---|---|
| In the Guardianship and Conservatorship of<br><br>GLENN E. WICKSTROM,<br><br>A Protected Person | Case No. 51-08-28450 (16)<br><br>LIMITED JUDGMENT APPOINTING GUARDIAN AND CONSERVATOR FOR AN ADULT FOR AN INDEFINITE PERIOD |

THIS MATTER came before the court on petition filed by Cynthia Zuniga for her appointment as guardian and conservator for Glenn E. Wickstrom, Respondent.

The court finds by clear and convincing evidence that:

1. Venue is properly in this court, and no other court in this or any other state has acquired jurisdiction in this matter.

2. Notices as required by ORS 125.060 and ORS 125.065 and 125.070 have been given to the persons entitled thereto. The time for filing objections has expired and no objections have been filed herein.

3. The Respondent is incapacitated and the appointment of a guardian is necessary as a means of providing continuing care and supervision of the Respondent.

4. The Respondent owns property and receives income which is in need of protection because he cannot effectively manage his own property without assistance due to impairments as set forth in the petition.

5. Cynthia Zuniga is a qualified and suitable person to act as guardian and conservator and is willing to serve. The court visitor has filed a report recommending the appointment of Cynthia Zuniga as guardian and conservator.

NOW, THEREFORE, IT IS HEREBY ORDERED AND ADJUDGED:

A. Cynthia Zuniga is appointed guardian for Glenn E. Wickstrom, Respondent, to



Jc

serve without bond, with authority:

(i) To establish Glenn E. Wickstrom's place of residence;

(ii) To provide for the care, comfort and maintenance of Glenn E. Wickstrom;

(iii) To consent or withhold consent to ongoing medical care and treatment for Glenn E. Wickstrom;

B. Letters of Guardianship shall issue to Cynthia Zuniga forthwith.

C. Cynthia Zuniga is appointed conservator for Glenn E. Wickstrom.

D. Transfer of any interest in Respondent's real property, motor vehicles or boat without further order of the court is prohibited.

E. Bond is set at $700,000.

F. Letters of Conservatorship be issued to Cynthia Zuniga upon filing a bond approved by the court;

DATED: January 15, 2009.

Lauren S. Holland, Circuit Court Judge

APPROVED AS TO FORM:

Megan Sweetman OSB# 05478 for
Gerry Gaydos OSB #764138
Attorney for Ali Yates

John G. Cox OSB #690370
Attorney for Respondent

Randall Bryson OSB# 771260
Attorney for Petitioner



[illegible], Gaydos, Churnside & Sherlock, P.C.
Attorneys at Law
777 High St.
Eugene, Oregon 97401-2782
(541) 687-8124

IN THE CIRCUIT COURT OF THE STATE OF OREGON FOR LANE COUNTY

| | |
|---|---|
| In the Matter of the Guardianship and Conservatorship Of:<br><br>GLENN E. WICKSTROM<br><br>Protected Person. | LETTERS OF CONSERVATORSHIP<br><br>Case No. 51-08-28450 |

BY THESE LETTERS OF CONSERVATORSHIP be informed:

That on January 15, 2009, the Circuit Court of Lane County, State of Oregon, appointed CYNTHIA ZUNIGA Conservator of the estate of GLENN E. WICKSTROM, and that the named Conservator has qualified and has the authority and duties of Conservator of the estate of the named protected person as provided by law.

LIMITATIONS: SEE ATTACHED COPY OF LIMITED JUDGMENT APPOINTING GUARDIAN AND CONSERVATOR FOR AN ADULT FOR AN INDEFINITE PERIOD.

IN TESTIMONY WHEREOF, I have hereunto subscribed my name and affixed the seal of the court at my office on this 23rd day of January, 2009.

CIRCUIT COURT LANE COUNTY STATE OF OREGON

ELIZABETH RAMBO
Clerk of the Court

By: ______________
Deputy

STATE OF OREGON )
) SS:
COUNTY OF LANE )

I, Elizabeth Rambo, Court Administrator of the above-named County and State and Clerk of the Circuit Court of the County of Lane and State of Oregon, do hereby certify that the foregoing copy of Letters of Conservatorship has been by me compared with the original, and that it is a correct transcript therefrom, and of the whole of such original Letters of Conservatorship as the same appears of record in Book 16, Page 4, Letters of Conservatorship now in my official care and custody.

Said letters are now in full force and effect.

IN TESTIMONY WHEREOF, I have hereunto set my hand and affixed the seal of said Court this 23 day of January, 2009

ELIZABETH RAMBO
Court Administrator

By: ______________
Deputy

CIRCUIT COURT LANE COUNTY STATE OF OREGON

488 University Avenue No. 419
Palo Alto, California 94301
Phone: 415 786 1000 Fax: [Your Fax]
E-Mail: [illegible]@mac.com

[illegible]: February 24, 2009
[illegible]: MARSH fax number 515-365-1520
[illegible]:
[illegible]:
[illegible]: Cynthia Wickstrom Zuniga
[illegible]:
[illegible]: 415-786-1000

[illegible]: 4

Urgent ☒ Reply ASAP ☐ Please Comment ☐ Please Review ☐ For Your Information ☐

Comments:

Enclosed please find documents showing that I am the conservator for Glenn B. Wickstrom (my father). His account number is 54800 and his certificate number is 2673731. His date of birth is 11-30-1943 and his social security number is 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.

I will need to obtain information concerning his policy as soon as possible, and trust that the enclosed conservatorship is satisfactory. Please call me if you have any questions. 415-786-1000.

Sincerely,

Cynthia Zuniga

Cynthia Wickstrom Zuniga

# MARSH @WORKSOLUTIONS BENEFICIARY DESIGNATION FORM

*This form is to designate a beneficiary for life insurance coverage for you and your spouse. Remember: When designating the Primary, be sure that the total shares equal 100%. Your Contingent Beneficiary is the person who will receive the death benefit if your primary beneficiary is no longer living.

Owner Name GLENN E. WICKSTROM SSN# 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
Daytime Phone ( ) 415 786 1000 Cert# 2673731
☐ Please check if new address
Address PO BOX 8483
City/State/Zip Coburg, OREGON 97408

Owner's Employer (or company insurance obtained from): Beckman-Coulter, In.

All previous beneficiary designations are hereby revoked and the following are designated as beneficiaries under this coverage. **No white outs or cross outs allowed in this section.**

Primary Beneficiary for Employee Coverage
Name(s): CYNTHIA WICKSTROM ZUNIGA %Share 100 Relationship Daughter
%Share ____ Relationship ____
%Share ____ Relationship ____
Total ____ % (must equal 100%)

Contingent Beneficiary for Employee Coverage (If Primary is not living)
Name(s): Marco Antonio Zuniga III %Share 100 Relationship grandson
%Share ____ Relationship ____
%Share ____ Relationship ____
Total ____ % (must equal 100%)

Primary Beneficiary for Spouse Coverage
Name(s): ~~Ma~~ NOT MARRIED %Share ____ Relationship ____
%Share ____ Relationship ____
%Share ____ Relationship ____
Total ____ % (must equal 100%)

Contingent Beneficiary for Spouse Coverage (if Primary is not living)
Name(s): ____ %Share ____ Relationship ____
%Share ____ Relationship ____
%Share ____ Relationship ____
Total ____ % (must equal 100%)

(The beneficiary for dependent children's coverage is the employee unless otherwise designated)

I represent the statements and answers given in this request form are true, complete, and correctly recorded to the best of my knowledge and belief. I understand the request for service will not become effective until received at Marsh @WorkSolutions, and approved in accordance with the terms of the coverage.

Owner's Signature [signature] Signed this 5 day of March, 2009

(Designations are invalid unless signature and date are completed)

Please send your signed change form to:
Marsh @WorkSolutions
PO Box 9279
Des Moines, IA 50306-9279

# MARSH @WORKSOLUTIONS BENEFICIARY DESIGNATION FORM

*This form is to designate a beneficiary for life insurance coverage for you and your spouse. Remember: When designating the Primary, be sure that the total shares equal 100%. Your Contingent Beneficiary is the person who will receive the death benefit if your primary beneficiary is no longer living.

Owner Name GLENN E WICKSTROM SSN# 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
Daytime Phone ( ) 415 786 1000 Cert# 21673731
☐ Please check if new address — Address 488 University Ave No 422
City/State/Zip Palo Alto CA 94301

Owner's Employer (or company insurance obtained from): ____________

All previous beneficiary designations are hereby revoked and the following are designated as beneficiaries under this coverage. No white outs or cross outs allowed in this section.

Primary Beneficiary for Employee Coverage
Name(s): CYNTHIA WICKSTROM ZUNIGA %Share 100 Relationship Daughter
________ %Share ____ Relationship ________
________ %Share ____ Relationship ________
Total ____ % (must equal 100%)

Contingent Beneficiary for Employee Coverage (if Primary is not living)
Name(s): Marco Antonio Zuniga III %Share 100 Relationship Grandson
________ %Share ____ Relationship ________
________ %Share ____ Relationship ________
Total ____ % (must equal 100%)

Primary Beneficiary for Spouse Coverage
Name(s): Not married %Share ____ Relationship ________
________ %Share ____ Relationship ________
________ %Share ____ Relationship ________
Total ____ % (must equal 100%)

Contingent Beneficiary for Spouse Coverage (if Primary is not living)
Name(s): not married %Share ____ Relationship ________
________ %Share ____ Relationship ________
________ %Share ____ Relationship ________
Total ____ % (must equal 100%)

(The beneficiary for dependent children's coverage is the employee unless otherwise designated)

I represent the statements and answers given in this request form are true, complete, and correctly recorded to the best of my knowledge and belief. I understand the request for service will not become effective until received at Marsh @WorkSolutions, and approved in accordance with the terms of the coverage.

Owner's Signature Cynthia Zuniga Signed this 14 day of March, 2009
Conservator & POA for GLENN WICKSTROM
(Designations are invalid unless signature and date are completed)

Please send your signed change form to:
Marsh @WorkSolutions
PO Box 9279
Des Moines, IA 50306-9279